UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

RICHARD LEWIS HUNTER , II,            §
                                     §
        Plaintiff,                   §
VS.                                  §   CIVIL ACTION NO. 2:14-CV-142
                                     §
TEXAS ENERGY SERVICES LP,            §
                                     §
        Defendant.                   §

## OPINION AND ORDER GRANTING IN PART AND
## DENYING IN PART MOTION TO DISMISS

Plaintiff Richard Lewis Hunter, II, proceeding *pro se*, alleges that Defendant Texas Energy Services, LP,[1] (TES or Defendant) discriminated against him on the basis of race, color and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended (Title VII), and Title 1 of the Civil Rights Act of 1991, 42 U.S.C. § 1981. Defendant filed a motion to dismiss on July 23, 2014 to which Plaintiff responded on August 11, 2014 (D.E. 12, 14). Defendant filed a reply to the response on August 13, 2014 (D.E. 16). For the reasons set forth below, Defendant's motion to dismiss is granted in part and denied in part.

### JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

---

[1] Defendant identifies itself as TX Energy Services, LP in its motion to dismiss (D.E. 12).

# BACKGROUND

The following facts are taken from Plaintiff's pleadings and the charge of discrimination[2] he filed and are viewed in the light most favorable to him. Plaintiff, who is Black, began to work for Defendant in Three Rivers, Texas on or about March 16, 2013. During his first month there, he was called a "monkey" by a another employee in the presence of a supervisor. On or about June 8, 2013 another employee called him a "N----r" and pulled a knife on him, again in the presence of a supervisor. Plaintiff complained about the treatment and completed a written statement but no action was taken.

Plaintiff's roommate[3] hid Plaintiff's food and clothes. Plaintiff was forced to work thirty-six hours without a break. At some point, Plaintiff was removed from his position and placed in the truck mechanic shop, although he had no experience doing mechanical truck repairs. He was told that he was moved to the shop because no one wanted to work with him after he complained about racial harassment. In the mechanic shop he was forced to perform dangerous and hazardous duties for which he had no training. At one point his supervisor forced Plaintiff to fetch toilet paper before he would allow him to take a break and ride with other workers.

---

[2] "Even though the EEOC charge is a matter outside the pleading, judicial notice of it may be taken as a matter of public record when deciding a Rule 12(b)(6) motion, especially since its authenticity is uncontested." *King v. Life School*, 809 F.Supp.2d 572, 579 n. 1 (N.D. Tex. 2011)(citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994).

[3] It is assumed that Plaintiff lived at the worksite at least part of the time.

Plaintiff applied for a sales position at TES and during an interview on or about July 30, 2013, Plaintiff was asked if he had any concerns about anything at the Three Rivers facility. Plaintiff told the interviewer about the harassment and mistreatment he had experienced. On or about August 9, 2013, Plaintiff was called into a meeting with the company attorney, the general manager and the general manager's son. He described the racial harassment that he had experienced and in particular the incident where the coworker pulled a knife and used the racial epithet.

When Plaintiff initially applied for the sales job he requested an annual salary of $80,000 based on his own market research. On August 10, 2013 a TES representative told him the company was offering an annual salary of $49,000 with the potential to make more. Plaintiff told her that he would accept the job at that salary. The representative told him that a job offer would be forthcoming but he was never formally offered the position. When he inquired, he was told that because his initial salary request was $80,000 that he was not seen as a good fit for the position. Plaintiff repeatedly told the representative that he would accept the lower salary and just wanted a chance at the job. Nevertheless, he never received a formal job offer and at some point was told that the position was "put on hold."

Plaintiff continued to work in the mechanical truck shop and continued to be harassed in retaliation for filing his complaint of racial discrimination. In what Plaintiff asserts was an act of harassment and retaliation, he was directed to remove a commercial tire and wheel from an industrial dump truck without help, a task usually performed by three or four men. He was told that if he did not remove the tire and wheel he would be

terminated and even though other employees offered to help, his supervisor would not let them and laughed at Plaintiff's efforts. Plaintiff removed the tire and felt something pop in his spine. Plaintiff asserts that moving the tire caused him to suffer a permanent back injury.

Plaintiff reported the incident to TES the same weekend it happened. Plaintiff made a claim for workers' compensation benefits which initially was denied but later granted.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on September 9, 2013 in which he alleged that he was discriminated against based on race and in retaliation for having complained about discrimination to his employer (D.E. 12 at 11-12). The EEOC completed its investigation and issued a Notice of Suit Rights on February 25, 2014 (D.E. 3 at 7-8). Plaintiff filed the instant lawsuit on April 18, 2014, alleging that he was discriminated against on the basis of race, color and national origin and in retaliation for having complained about his treatment. He further alleges that he suffered permanent physical injuries as a result of the discriminatory treatment and that he also has suffered mental distress.

In its motion to dismiss, TES asserts that Plaintiff has failed to state a claim for relief based on color or national origin because he did not make those allegations in his EEOC charge and they are therefore unexhausted.[4] Defendant also moves to dismiss Plaintiff's claim based on the fact that at the time he filed his lawsuit he falsely stated that

---

[4] Defendant initially argued that Plaintiff had not complained of racial harassment in the EEOC charge but in a subsequent pleading acknowledged that Plaintiff did complain of harassment (D.E. 12, 16 at n.1).

he had earned no income in the previous twelve months, resulting in the court finding

him indigent and granting him leave to proceed *in forma pauperis* (D.E. 2).  Following an

initial pretrial conference, Plaintiff was ordered to pay the $400 filing fee and did so

(Minute Entry of July 30, 2014).  Nevertheless, TES continues to urge that Plaintiff's

lawsuit be dismissed because his allegations of poverty were untrue.

## APPLICABLE LAW

### I. Exhaustion

An employee who brings a Title VII law suit must first exhaust administrative

remedies by filing an administrative charge with the EEOC.  *McClain v. Lufkin

Industries, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).  The charge allows the EEOC to

investigate and, if appropriate, negotiate a resolution with the employer.  *Id.*  If a court

allows a lawsuit to proceed when the allegation exceeds the scope of EEOC exhaustion, it

creates the possibility of thwarting the administrative process and peremptorily

substituting litigation for conciliation.  *Id.*  However, another consideration at play is that

Title VII was designed to protect people who are not familiar with drafting legal

documents.  *Id.* "To reconcile these policies, [the] court construes an EEOC complaint

broadly but in terms of the administrative EEOC investigation that 'can reasonably be

expected to grow out of the charge of discrimination.'"  *Id.* (quoting *Sanchez v. Standard

Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).  The court uses a fact-intensive analysis

of the administrative charge that looks beyond the four corners of the document to its

substance.  "In sum, a Title VII lawsuit may include allegations 'like or related to

allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" *Id.* (citing *Sanchez*, 431 F.2d at 466).

The EEOC form contains boxes describing the possible bases of discrimination and a complainant is directed to check the box that corresponds to his situation. In this case, Plaintiff checked only the boxes on the EEOC form for "race" and "retaliation" but did not check the boxes for "color" or "national origin." When setting forth the facts of his complaint, Plaintiff stated that he was the only Black working at the Three Rivers site in his department and also stated that he believed that he was discriminated against "because of [his] race, Black" and retaliated against for making a complaint (EEOC charge, D.E. 12 at 12). No mention is made anywhere in the complaint of discrimination based on national origin or color, other than when Plaintiff described himself as "Black."

Courts looking at the issue have generally held that color discrimination arises when "'the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light colored African-American individual.'" *Taylor v. Texas Southern University*, No. 4:12-cv-01975, 2013 WL 5410073 at *8 (S.D. Tex. 2013)(quoting *Bryant v. Bell Atl. Maryland, Inc*., 288 F.3d 124, 132 n. 5 (4th Cir. 2002)). *See also Cooper v. Jackson-Madison County General Hospital District*, 742 F.Supp.2d 941, 950-951 (W.D. Tenn. 2010)(citing EEOC Compliance Manual, Section 15-II, III (Apr. 19, 2006)[5])(terms "race" and "color" are not synonymous  although meanings overlap; "color" refers to pigmentation, complexion or skin shade or tone).

---

[5] Available at http://www.eeoc.gov/policy/docs/race-color.html#III (last viewed October 20, 2014).

Although Plaintiff complains that he was discriminated against based on color and national origin in his original complaint, he did not raise those claims in his EEOC charge and they are thus unexhausted. Accordingly, TES's motion to dismiss those claims is GRANTED. Plaintiff's Title VII claims based on color and national origin discrimination are DISMISSED for failure to exhaust.

Plaintiff brings his discrimination claims under both Title VII and 42 U.S.C. § 1981. Because § 1981 does not require a plaintiff to first bring an EEOC charge, *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005), TES's motion to dismiss is DENIED insofar as it seeks dismissal of Plaintiff's § 1981 claim based on his color discrimination claim.

## II. *In Forma Pauperis* **Affidavit**

The criteria for proceeding *in forma pauperis* are set forth in 28 U.S.C. § 1915. Relevant to Defendant's motion, the statute provides that notwithstanding the payment of the filing fee, or any portion thereof, the court shall dismiss a case at any time if the court determines that the allegation of poverty is untrue. 28 U.S.C. § 1915(e)(2). However, the requirement of dismissal does not mandate that a district court dismiss a plaintiff's claim if it finds that certain assertions in the affidavit are untrue; rather, it requires the court to dismiss the claim if it finds that he is not sufficiently poor to qualify for *in forma pauperis* status given the facts that are true. *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000).

When Plaintiff filed an application to proceed *in forma pauperis* on April 17, 2014 he answered questions under penalty of perjury and checked "no" to a question asking

whether he had received any income in the previous twelve months (D.E. 1 at 1-2). His motion to proceed without paying costs was granted on April 22, 2014 (D.E. 2). Defendant points out that Plaintiff had been employed at TES until August 29, 2013, well within the twelve-month period prior to Plaintiff's completing the financial affidavit, and had earned approximately $21,000 in the four months he worked there. At a hearing held on July 30, 2014, Plaintiff stated that he had been unemployed and had no income from August 2013 until he received a worker's compensation award in June 2014 and was dependent on his family and friends for his living expenses while he was unemployed. The Court ordered him to pay the filing fee and he did so the same day.

Defendant argues that because Plaintiff was untruthful about having worked in the previous twelve months when he filed his financial affidavit, that the Court must dismiss his cause of action. However, although Plaintiff answered the *in forma pauperis* application incorrectly with regard to when he had last received a salary, the Court does not find that Plaintiff's allegation of poverty at the time he filled out the application in April 2014 was untrue, based on his statements at the hearing. In addition, after he received his worker's compensation award, Plaintiff promptly paid the filing fee when ordered to do so by the Court and Defendant has not shown any prejudice related to the late payment of the filing fee. Accordingly, Defendant's motion to dismiss Plaintiff's cause of action based on representations in his application to proceed *in forma pauperis* is DENIED.

## **CONCLUSION**

Based on the foregoing, it is ORDERED Defendant's motion to dismiss (D.E. 12) is GRANTED in part and DENIED in part. Plaintiff's Title VII causes of action for discrimination based on color and national origin are DISMISSED for failure to exhaust administrative remedies. Plaintiff may proceed on his Title VII causes of action for discrimination based on race and on retaliation. In addition, Plaintiff may proceed on his 42 U.S.C. § 1981 causes of action.

ORDERED this 23rd day of October, 2014.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE