UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RICHARD LEWIS HUNTER II, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:14-CV-142 |
| § | |
| TEXAS ENERGY SERVICES LP, § | |
| § | |
| Defendant. § | |

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Richard Lewis Hunter filed this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), and Title 1 of the Civil Rights Act of 1991, 42 U.S.C. § 1981, on October 23, 2014. Plaintiff alleges that his employer, Texas Energy Services, LP (TES or Defendant), discriminated against him on the basis of race and retaliated against him when he complained about the discrimination. Defendant filed a motion for summary judgment on June 10, 2015 to which Plaintiff responded on July 1, 2015 (D.E. 37, 40). For the reasons set forth below, Defendant's motion is granted.

**JURISDICTION**

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is appropriate in this court because the actions about which Plaintiff complains occurred in Three Rivers, Live Oak County, Texas.

## BACKGROUND

This recitation of facts is taken from the pleadings and supporting documents viewed in the light most favorable to Plaintiff.  Plaintiff, who is Black, began to work for Defendant in Three Rivers, Texas on or about March 16, 2013.  Defendant provides oilfield services.

During Plaintiff's first month on the job, a coworker called him a monkey in the presence of a supervisor.  The employee also made "monkey sounds" at Plaintiff.  On or about June 8, 2013 another employee called him a "n*****" and pulled a knife on him, again in the presence of a supervisor.  Another employee told Plaintiff that "all Black people like watermelon and chicken" and asked him why he didn't want any.  Plaintiff's roommate[1] hid Plaintiff's food and clothes and Plaintiff was forced to work thirty-six hours without a break.  Plaintiff complained about the treatment and completed a written statement but no action was taken.

Plaintiff was transferred to a position known as a "swamper."  A swamper rides with a lead driver to help the driver perform oil field services such as loading and unloading oil field fluids using high pressure hoses and valves.  At some point, Plaintiff was removed from the swamper position and placed in the truck mechanic shop, although he had no experience doing mechanical truck repairs.  He was told by his supervisor in that department that he was moved to the shop because no one wanted to work with him after he complained about racial harassment.  In the mechanic shop he was forced to perform dangerous and hazardous duties for which he had no training.  At one point his

---

[1] It is assumed that Plaintiff lived at the worksite at least part of the time.

supervisor forced Plaintiff to fetch toilet paper before he would allow him to take a break and ride with other workers. Another time Plaintiff was asked by his crew leader to drive a truck that did not have any brakes and he almost had an accident as the truck gained speed while he circled the yard, trying to avoid other vehicles and gas tanks. A supervisor heard Plaintiff screaming for help and "pulled out the wires" to stop the truck. Plaintiff's coworkers laughed and said the incident was a prank.

Plaintiff applied for a sales position at TES and during an interview on or about July 30, 2013, Plaintiff was asked if he had any concerns about anything at the Three Rivers facility. Plaintiff told the interviewer about the harassment and mistreatment he had experienced. Plaintiff asserts that a TES representative told him not to tell his coworkers that he had been hired for the sales position or that he had complained about racial harassment and bullying. She warned Plaintiff that if he told anyone anything that someone at the Three Rivers facility would kill him.

On or about August 9, 2013, Plaintiff was called into a meeting with the company attorney, the general manager and the general manager's son. Plaintiff described the racial harassment that he had experienced and in particular the incident where the coworker pulled a knife and used the racial epithet.

When Plaintiff initially applied for the sales job he requested an annual salary of $80,000 based on his own market research. On August 10, 2013 a TES representative told him the company was offering an annual salary of $49,000 with the potential to make more. Plaintiff told her that he would accept the job at that salary. The representative told him that a job offer would be forthcoming but he was never formally

offered the position. When he inquired, he was told that because his initial salary request was $80,000 that he was not seen as a good fit for the position. Plaintiff repeatedly told the representative that he would accept the lower salary and just wanted a chance at the job. Nevertheless, he never received a formal job offer and at some point was told that the position was "put on hold."

Plaintiff continued to work in the mechanical truck shop. In what Plaintiff asserts was an act of harassment and retaliation, on August 29, 2013 he was directed to remove a commercial tire and wheel from an industrial dump truck without help, a task usually performed by three or four men. He was told that if he did not remove the tire and wheel he would be terminated and even though other employees offered to help, his supervisor would not let them and laughed at Plaintiff's efforts. Plaintiff removed the tire and felt something pop in his spine. Plaintiff asserts that moving the tire caused him to suffer a permanent back injury.

Plaintiff reported the incident to TES the same weekend it happened. Plaintiff made a claim for workers' compensation benefits which initially was denied but later granted. Plaintiff continues to be employed by TES although he has not worked there since the day he was injured. He apparently continues to receive workers' compensation for the back injury he sustained.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on September 9, 2013 in which he alleged that he was discriminated against based on race and in retaliation for having complained about discrimination to his employer (D.E. 12 at 11-12). The EEOC completed its investigation

and issued a Notice of Suit Rights on February 25, 2014 (D.E. 3 at 7-8). Plaintiff filed the instant law suit on April 18, 2014, alleging that he was discriminated against on the basis of race, color and national origin and in retaliation for having complained about his treatment. His color and national origin claims were dismissed for failure to exhaust administrative remedies on October 23, 2014 (D.E. 25). Petitioner also alleges that he suffered permanent physical injuries and mental distress as a result of the discriminatory treatment.

In its motion for summary judgment, Defendant argues that there is no evidence to support a prima facie case of racial harassment or retaliation based on race. In response to the motion for summary judgment, Plaintiff alleged additional facts that he claims support his claims and contends that issues of material fact preclude summary judgment.

## APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.

*Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.*

Affidavits must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). *See also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992)(per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)(per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)(per curiam).[2]

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual

---

[2] Plaintiff has failed to submit affidavits or verified statements in response to the motion for summary judgment. Nevertheless, rather than order Plaintiff to submit an affidavit as allowed by Fed. R. Civ. P. 56(e), the Court assumes for purposes of this motion that the allegations Plaintiff made in his complaint and in his response to the motion for summary judgment are true.

issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

## B. Title VII

### 1. Failure to Promote

Under Title VII, it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin. 42 U.S.C.A. § 2000e-2. The analysis of a Title VII case is well known:

> The plaintiff must establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor. Once established, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. But, if the defendant has offered a legitimate nondiscriminatory reason for its action, the presumption of discrimination derived from the plaintiff's prima facie case "simply drops out of the picture," . . . and "the ultimate question [is] discrimination *vel non*."

*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089-90 (5th Cir. 1995)(citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 246, 253-257 (1981); *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 803 (1971)).

In order to make out a prima facie case on a failure to promote claim, a plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position

sought; (3) he was not promoted and (4) the position was filled by someone outside the protected class. *Oden v. Oktibbeha County*, 246 F.3d 458, 468 (5th Cir. 2001). If a plaintiff makes out a prima facie case, the burden of production shifts to the defendant to produce evidence that the plaintiff was rejected for a legitimate, nondiscriminatory reason. *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)). The focus then shifts to the ultimate question of whether the defendant intentionally discriminated against the plaintiff. *Grimes v. Tx. Dept. of Mental Health*, 102 F.3d 137, 140 (5th Cir. 1996)(citing *Hicks*, 509 U.S. 502, 510-511 (1993)).

Title VII plaintiffs ordinarily must prove their claims through circumstantial evidence and may do so by demonstrating that a defendant's articulated nondiscriminatory reason was pretextual. *Grimes*, 102 F.3d at 141(citations omitted). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may, but does not necessarily, permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.*, 530 U.S. at 148-149.

In its motion for summary judgment, Defendant submitted evidence that Plaintiff was not hired for the position of salesman because he lacked experience in oilfield sales

and also because he initially asked for a salary of $120,000 and later stated he would agree to an $80,000 salary. TES believed that Plaintiff was not a good fit for the position because his salary request was so much higher than the proffered $49,000 salary (Affidavit of Michelle White, Ex. 3 to Mot. for Sum. Jmt., D.E. 37-1). Defendant offered additional evidence that it ultimately decided to not create the position and never filled the position for which Petitioner applied (*Id.*)

Based on these facts, Petitioner cannot make out a prima facie case because he cannot show that a person outside his protected class was hired for the position. Moreover, even if Plaintiff had made out a prima facie case, Defendant has offered a legitimate, nondiscriminatory reason for its decision to not hire Plaintiff and Plaintiff has presented no evidence that the articulated nondiscriminatory reason was pretextual. Accordingly, Plaintiff has failed to meet his burden of proof and summary judgment is entered on Plaintiff's racial discrimination claim based on TES's failure to promote him to the sales position.

### 3. Retaliation

In addition to barring discrimination in the workplace based on race, color, religion, sex or national origin, Title VII also forbids an employer from discriminating against an employee because that individual opposed any practice made unlawful by Title VII, or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). The Supreme Court held in *Burlington Northern & Santa Fe Railway Co. v White*, 548 U.S. 53 (2006), that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment

or occur at the workplace.  The Court also concluded that the provision covers those employer actions that would have been materially adverse to a reasonable employee.  *Id.*, 548 U.S. at 57.  The Court specifically rejected the Fifth Circuit holding in *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997), which limited retaliation claims to so-called "ultimate employment decisions." *White*, 548 U.S. at 67.  Instead, the Court defined "materially adverse" actions as those actions which, in the context of a particular case, were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.  *Id.*, 548 U.S. at 68.

The Court went on to note that it was important to separate significant from trivial harms, because Title VII does not set forth a general civility code for the American workplace.  *Id.* (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)).  An employee's decision to report discriminatory behavior does not immunize that employee from petty slights and minor annoyances that often take place at work and that all employees experience.  Rather, the Title VII retaliation provisions prohibit employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts and their employers.  *Id.* (citing *Robinson v. Shell Oil*, 519 U.S. 337, 346 (1997)).

To make out a prima facie case for retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) an adverse employment action occurred and (3) a causal link exists between the protected activity and the adverse employment action. *Gorman v. Verizon Wireless, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014).  An employee engages in a protected activity if he opposes any practice made an unlawful employment

practice under Title VII. *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). If the plaintiff succeeds in making out a prima facie case, the burden shifts to the employer to state a legitimate non-retaliatory reason for the employment action.

It is undisputed that Plaintiff complained about racial harassment and that he was not selected for a promotion. Although Plaintiff has offered nothing other than his own interpretation of events to support his allegation that he was offered the position only to have it withdrawn after he complained, it will be assumed for purposes of this motion that his description of events is true. Giving him every benefit of the doubt, he has made out a prima facie case of retaliation. Nevertheless, his retaliation claim fails for the same reason his race-based failure to promote claim fails--he cannot overcome Defendant's non-retaliatory explanation that he was not promoted to the sales position because his initial salary demand was too high and also because Defendant ultimately decided not to fill the position.

Plaintiff also complains that he was transferred to the mechanic shop out of retaliation for having complained about harassment. Defendant submitted evidence that Plaintiff first was transferred to the swamper position in an effort to separate him from the other employees in the wash rack. However, the driver to whom Plaintiff was assigned complained that Plaintiff was not a good worker and was unsafe. As a result, TES transferred Plaintiff to the mechanic shop (Affidavit of Kle Harless, Ex. 2 to Mot. for Sum. Jmt., D.E. 37-1 at 14; Statement of Tino Cortez, Ex. 4 to Mot. for Sum. Jmt., D.E. 37-1 at 17).

Defendant has offered evidence of a non-retaliatory reason for transferring Plaintiff to the mechanic shop and Plaintiff has presented no evidence that the reason is a pretext for discrimination. Therefore, Plaintiff has not met his burden of showing that TES discriminated against him in a retaliatory fashion when they transferred him to the mechanic shop.

Finally, Petitioner asserts that he was threatened with murder if he told anyone he had been promoted or spoke out against harassment. While such an allegation is alarming, the Court finds it to be factually frivolous. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). The Court finds it wholly incredible that a TES representative told Plaintiff he would be killed if he spoke out against perceived harassment. Moreover, even if TES did threaten to kill Plaintiff, it did not deter him from filing an EEOC claim or bringing this law suit and he has not been physically harmed in retribution.

Plaintiff has failed to show the existence of a genuine issue of material fact in response to Defendant's motion for summary judgment on his retaliation claim. Accordingly, summary judgment is entered for Defendant on Plaintiff's retaliation claim.

### 3. Hostile Environment

Plaintiff also alleges that he was subjected to a hostile work environment at TES. To make out a hostile environment claim under Title VII, a plaintiff must show (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the

harassment complained of was based on his protected status; (4) the harassment affected a term, condition or privilege of employment and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). The workplace must be permeated with discriminatory intimidation, ridicule and insult, which is sufficiently severe to alter the conditions of the complainant's employment and create an abusive working environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 330 (5th Cir. 2009). A complainant need not show that the conduct seriously affected his well-being or led him to suffer injury, but that the environment would reasonably be perceived and is perceived as hostile or abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993)(citing *Meritor*, 47 U.S. at 67); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)). In order to determine whether an environment is hostile or abusive, a court must look at the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23. A single incident of harassment, if sufficiently severe, could give rise to a hostile environment claim and a continuous pattern of much less severe incidents of harassment can do the same. *EEOC v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007).

In the Fifth Circuit, discriminatory verbal intimidation, ridicule and nasty insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Walker v. Thompson*, 214 F.3d 615, 626

(5th Cir. 2000)(citing *Wallace v. Texas Tech University*, 80 F.3d 1042, 1049, n. 9 (5th Cir. 1996)).  However, the mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.  *Harris*, 510 U.S. at 21.

Where the Supreme Court has found that plaintiffs have made out a cause of action for hostile environment sexual harassment, the circumstances tend to be extreme.  For example, in *Meritor*, over a four-year period the plaintiff felt obligated to have sex with her supervisor out of fear of losing her job and the supervisor made repeated sexual demands on her, fondled her in front of other employees, followed her into the women's restroom, exposed himself to her and forcibly raped her on several occasions.

In *Harris*, over a 19-month period, the supervisor made comments to the plaintiff like "You're a woman, what do you know?" and "We need a man as the rental manager."  He also called her "dumb ass woman."  In front of other employees, the manager suggested that he and plaintiff go to a motel to negotiate her raise and occasionally asked plaintiff and other female employees to get coins out of his front pants pocket.  He threw objects on the ground and asked female employees to pick them up and made sexual innuendoes about their clothes.  In front of other employees, the manager asked the plaintiff if she had promised a customer sex as part of a deal she had negotiated.

In *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435 (5th Cir. 2011), an age discrimination case, the plaintiff's supervisor called him names like "old mother******," "old man," and "pops."  After the plaintiff requested time off on a holiday, his supervisor never called him by his given name again, but only by the insulting names.  Plaintiff was

called the names six times a day, beginning shortly after he was hired and for approximately two months until he resigned. In addition, Dediol presented evidence that his supervisor "charged" at him during a staff meeting, often threatened to "kick [his] ass" and engaged in other physically threatening acts. *Id.*, 655 F.3d at 441, 443. The court concluded that a genuine issue of material fact precluded entry of summary judgment on Dediol's hostile environment claim.

Similarly, in *WC&M Enterprises*, the plaintiff, who was from India, was subjected to verbal harassment on a regular basis for approximately one year. He constantly was called "Taliban" and referred to as an "Arab" by his coworkers, who also mocked his diet and prayer rituals. In addition, his coworkers suggested he was involved in the September 11, 2001 terrorist attacks, told him to "go back where he came from" and a supervisor described him as a "Muslim extremist" in a written warning. In addition, one of his coworkers repeatedly banged on the glass partition of the employee's office to startle him. *Id.*, 496 F.3d at 400. The court found that although no single incident of the harassment was likely sufficient to establish severe or pervasive harassment, the incidents, when considered together, showed a long-term pattern of ridicule sufficient to establish a claim under Title VII. *Id.* at 401.

Examples where courts did not find that workplace behavior rose to the level of a hostile environment include *Hollins v. Premier Ford Lincoln Mercury, Inc.*, 766 F.Supp. 736, 743 (N.D. Miss. 2011) and *Cavalier v. Clearlake Rehabilitation Hosp., Inc.*, 306 Fed. Appx. 104 (5th Cir. 2009). In Hollins, a female African-American sales woman complained that the finance manager refused to provide her with support to secure

financing for car deals.  In addition she complained that the finance manager called her a "black bitch" and a "f****** bitch."  He also told plaintiff that the only reason a customer bought a car from her was because he wanted to have sex with her and that she needed to have sex with a customer who bought two cars from her.  Another coworker cussed her out and her supervisor touched her calf and called her a "bitch" on the day she was terminated.  *Id.* at 739, 743.  The court stated that even if all the conduct occurred as plaintiff described, it was not "extreme" under the Title VII standard.  *Id.* at 743-745.

In *Cavalier*, an African-American former nursing supervisor testified that another supervisor twice called him "boy," once told him that she would "beat the tar off of him," bragged to others that she would have him fired and repeatedly called him a "doofus" and "dunce."  *Cavalier*, 306 Fed. Appx. at 105-106.  Altogether the plaintiff cited twelve instances of behavior he believed to be racially motivated.  However, the court found that only three of the incidents could reasonably be tied to his race and that those three were insufficient to show a hostile work environment.  *Id.* at 107.

In the instant case, Petitioner asserts that a coworker called him a "monkey" and a "n*****" and pulled a knife on him.  Defendant submitted an affidavit from TES's regional manager in which he stated that on July 12, 2013 Plaintiff complained that a coworker used a racial slur toward him and threatened him with a knife.  The manager questioned the coworker who denied the allegations.  Although the manager could not conclude that the incident occurred, the coworker was warned to not threaten Plaintiff or make racial slurs.   The coworker was terminated on July 18, 2013 for excessive absenteeism (Harless Aff., Ex. 2 To Mot. for Sum. Jmt., D.E. 37-1 at 1).  Plaintiff does

not deny that the manager spoke to the coworker or that the coworker was terminated within the week, albeit for a different reason. Because the employer took prompt remedial action, Plaintiff cannot make out a racial harassment claim based on the coworker's behavior.

Plaintiff made other claims in his complaint and in response to the motion for summary judgment that another employee made monkey noises at him and also that someone commented that all Black people like watermelon and chicken. Such remarks, though rude, do not rise to the level of harassment found actionable in the Fifth Circuit.

Moreover, even if those remarks were actionable, TES took prompt, remedial action when it moved Plaintiff to the swamper position to get him away from his coworkers in the wash rack. The lateral transfer of a person who complains about harassment when the claim cannot be confirmed or corroborated is a "prudent response" to an unpleasant situation. *Nash v. Electrospace Systems, Inc.*, 9 F.3d 401, 404 (5th Cir. 1993). Because TES took remedial action to remove Plaintiff from the abusive environment, he cannot make out a claim for racial harassment based on these incidents.

Plaintiff has not presented evidence that his remaining claims[3] were based on race. While the alleged actions are abominable and in some cases may have violated workplace safety, compensation, or criminal statutes or regulations, they cannot form the basis of a racial harassment claim because there is no evidence that they actions were taken because

---

[3] His coworker hid his food and clothes; another employee told him he was a target and no one wanted him at TES; he was forced to fetch toilet paper for his supervisor; he had to work thirty-six hours without a break; he was forced to drive a truck without brakes; and he was threatened with murder if he told coworkers he was hired as a salesman.

of Plaintiff's race. "Title VII is not a shield against harsh treatment at the workplace; it protects only in instances of harshness disparately distributed." *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981). Accordingly, Plaintiff's claims that he was subjected to a race-based hostile environment are dismissed and judgment is entered for Defendant.

### C. 42 U.S.C. § 1981

Plaintiff also asserted claims under 42 U.S.C. § 1981. Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996). Thus, Plaintiff cannot prevail on his § 1981 claims for the same reasons he cannot prevail on his Title VII claims.

### CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment (D.E. 37) is GRANTED. Summary judgment is entered for Defendant on all of plaintiff's Title VII and 42 U.S.C. § 1981 claims and those claims are DISMISSED with prejudice.

ORDERED this 9th day of September, 2015.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE